FILED

2015 Nov-02  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ADTRAV CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| | ) | NO:  2-14-CV-0056-TMP-S |
| | ) | OPPOSED |
| V. | ) | |
| | ) | |
| DULUTH TRAVEL, INC., | ) | |
| | ) | |
| Defendant and Plaintiff in Counterclaim. | ) | |

## DEFENDANT DULUTH TRAVEL, INC.'S MOTION TO COMPEL DISCOVERY AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW Defendant Duluth Travel, Inc. ("Defendant" or "Duluth") and pursuant to Rule 37(a) of the Federal Rules of Civil Procedure ("FRCP"), files this, its Motion to Compel Discovery and Memorandum of Law in Support thereof ("Motion to Compel"). Duluth brings this Motion to Compel because of Plaintiff Adtrav Corporation's ("Plaintiff" or "Adtrav") failure to respond to several of Duluth's interrogatories and requests for production of documents. For the reasons set forth below, Duluth respectfully requests that this Court grant its Motion to Compel.

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Prior to filing this Motion to Compel, Duluth contacted Plaintiff to see if the parties could work through their discovery disputes (and if not, if it would oppose this motion).  Pursuant to the Court's October 19, 2015 Order, the parties conferred on October 23, 2015 to discuss Plaintiff's Motion for Leave to Permit Additional Discovery.  During the discussions, Duluth also addressed with counsel for Plaintiff the discovery issues in this motion, explained its reasoning for needing the information that Plaintiff has failed to produce, and provided a verbal outline of same to Plaintiff. Thereafter, on Wednesday October 28, 2015 Duluth provided a written recital of the issues to Plaintiff. *Worksheet for Opposing Counsel* (Exhibit A).  Despite these efforts, Plaintiff has indicated it cannot yet produce the information and opposes the motion.  Based on this failure to reach any agreement, the following is Duluth's listing of the issues and extensive record of Duluth's attempts to resolve same without having to request the Court's assistance.

It is important for the Court to gain some insight into the nature of the business relationship between the Parties such that the Court might appreciate the critical nature of the material that Plaintiff has withheld in discovery. From 2005-2014, Duluth served as the prime contractor for the Department of Veterans Affairs ("VA") for the provision of travel services.

Plaintiff was a subcontractor to Duluth in that endeavor. As payment for their services, the Parties received a small percentage of booking fees. In the case of airline ticket transactions, these percentages are called "transaction fees."  In the case of car and hotel rentals, the fees received are called "commissions," and in the case of certain incentives for volume of transactions or other benchmarks, the fees are termed either "bonuses" or "segment fees."  As discussed above, Plaintiff and Duluth had entered into a contract in 2005 whereby Plaintiff would be a subcontractor to Duluth in servicing the VA account. A second contract was entered between the Parties in 2010 for this account (the "VA contracts"), described in greater detail in the Complaint. Duluth paid Plaintiff a monthly fee to perform the accounting for servicing the VA contracts.  Plaintiff had complete control over the collection of revenue earned under the VA contracts, the reporting of that revenue to Duluth and the preparation of all of the weekly and monthly reconciliations which purported to show all revenue earned and collected, and the division of those revenues between the Parties. In short, Plaintiff had total and unilateral control over the receipt and reporting of revenues from inception until approximately mid-2013 when Duluth began performing the accounting functions after much dispute between the Parties. Plaintiff never provided independently verifiable third-party data or backup,

if you will, to support the numbers reported by Plaintiff to Duluth in the weekly and monthly reconciliations described above. In other words, throughout the seven years wherein Plaintiff controlled the collection and reporting of revenue and throughout discovery in this lawsuit (which it is important to note Plaintiff initiated) Plaintiff's position has been to say that there was no need to provide any of the independent third-party data from which its reports were compiled (or alternatively, Plaintiff indicated that it had either lost the information or destroyed it).

This refusal to provide access to third-party backup for the revenue that Plaintiff reported would be confounding under any circumstances. However, what Duluth has uncovered since taking over the accounting functions makes Plaintiff's refusal to provide the backup even more suspect. After DTI assumed the accounting functions from Plaintiff under the VA contracts, a number of disturbing patterns began to emerge. Chief among those patterns was a dramatic increase in the volume of commissions being earned on the VA contract compared to those Plaintiff had reported while performing the accounting and the revenue reporting. By way of example, Duluth performed all of the accounting for the VA contract in 2014. In that year, overall transactions were similar yet the commissions earned on those transactions were almost double the volume reported as having been earned

and collected by Plaintiff. The same can be said for each of the previous years when Plaintiff controlled the accounting. Based on these facts, it is Duluth's position that revenue was collected by Plaintiff and not reported or shared with Duluth. Because Plaintiff refuses to provide the backup, only the third-party data that Duluth has sought via third-party subpoenas can reveal that this suspicion is accurate. In fact, Duluth has already reviewed subpoenaed records of numerous third parties in an effort to explain the discrepancies observed since Duluth took over the accounting. Thus far, Duluth has specifically identified approximately $221,000.00 in what Duluth believes represents unreported commissions and transaction fees earned on the VA contract. That is, commissions and transaction fees not reported to Duluth by Plaintiff.

Having explained Duluth's critical interest in and need for the material not produced by Plaintiff, a recital of Duluth's fruitless efforts to obtain that material now follows.

As an initial matter, Plaintiff has been completely evasive or wholly inadequate in answering questions about its electronically stored information (ESI). Duluth cannot even discern the extent of Plaintiff's other discovery failures due to the fact it has no idea what types of storage Plaintiff uses for its ESI and business records much less whether these sources were searched

or how they were searched.   FRCP 26(a)(1)(A) specifically requires a description by category and location of all documents and electronically stored information as an initial disclosure.  In addition to this requirement, Duluth also requested this same information in formal discovery from Plaintiff. Notwithstanding the foregoing and as of the filing of this motion, Plaintiff has yet to provide even the most rudimentary description of its ESI infrastructure.  This failure by the Plaintiff is particularly concerning given the huge amount of critical financial and accounting data the Plaintiff claims has been lost or destroyed as discussed in detail below.

Beyond the issue of ESI, Plaintiff has further failed to respond to numerous interrogatories and requests for documents.  Duluth first served interrogatories and requests for production of documents on Plaintiff on May 30, 2014.   Plaintiff responded on July 11, 2014, albeit with a host of objections and incomplete or evasive responses to Duluth's requests.  *See Duluth's First Interrogatories to Plaintiff* (Exhibit B), *Duluth's First Request for Production of Documents to Plaintiff* (Exhibit C), *Plaintiff's Response to Duluth's Interrogatorie*s (Exhibit D), and *Plaintiff's Response to Duluth's Request for Production of Documents* (Exhibit E).  In a good-faith effort to obtain substantive responses from the Plaintiff voluntarily, Duluth outlined its concerns regarding the inadequacy of Plaintiff's

responses in a letter dated July 19, 2014.  *See Parties' Discovery Dispute Correspondence* (Exhibit F at p. 1).  On August 13, 2014, Plaintiff provided amended responses to Duluth's first interrogatories that addressed a few discovery issues. *See Parties' Discovery Dispute Correspondence* (Exhibit ) at p.5).  However, most of Plaintiff's responses either referred Duluth back to the original responses or ignored Duluth's request for substantive replies entirely.

On September 26, 2014, Duluth again attempted to obtain substantive responses to its discovery requests from the Plaintiff voluntarily via letter. *See Parties' Discovery Dispute Correspondence* (Exhibit F p. 28).   On October 8, 2014, Duluth followed up with yet another letter in its continuing efforts to obtain essential discovery from the Plaintiff concerning the data from which it purportedly compiled the accounting reports of the revenue earned pursuant to the VA contracts.  *See Parties' Discovery Dispute Correspondence* (Exhibit F p. 31).  Finally, on October 24, 2014, Plaintiff supplemented its document production, but again almost none of the requested backup documents was produced. *See Parties' Discovery Dispute Correspondence* (Exhibit F p. 34).  Plaintiff has objected to producing certain documents on the basis of confidentiality, but it has not specified

these documents in any detail nor explained the confidential nature of the documents.

On December 1, 2014, the parties submitted a Joint Motion for Consent Protective Order which order was entered the same day. *See* Court Documents 29 & 30. The parties entered into the protective order specifically to address any issue related to confidentiality.

On May 19, 2015, Duluth again attempted to procure substantive compliance with discovery from the Plaintiff by letter. That letter sought not only full responses to inadequate or incomplete responses to discovery but also specifically requested explanations for Plaintiff's myriad of objections, as well as information about Plaintiff's ESI. *See Duluth's Deficiency Letter* (Exhibit G). Plaintiff responded on June 12, 2015 via letter. *See Plaintiff's Deficiency Response* (Exhibit H). Plaintiff again supplemented its production with documents showing calculations and some documentation with regard to transaction fees, but again, the response was vastly deficient and provided no information about the ESI.

In a continuing effort to obtain information about Plaintiff's ESI, Duluth sent a second round of interrogatories on June 27, 2015 to which Plaintiff responded on July 27, 2015, again with deficiencies. *See Plaintiff's Response to Duluth's 2nd Interrogatories* ("*Responses to 2nd*

*Interrogatories*") (Exhibit I).  Plaintiff claimed that "virtually all of Adtrav's VA information is stored in either TRAMS, its reporting database, or desktops." *See Responses to 2nd Interrogatories* (Exhibit I p. 3).  Finally, at Plaintiff's 30(b)(6) deposition, counsel for Duluth again discussed on the record the issue of documents that Plaintiff had failed to produce.  *See Excerpts of the Deposition of Roger Hale* ("*Hale Deposition*") (Exhibit J p. 2:6).  Despite these efforts to work through the discovery dispute, Plaintiff still has not produced its electronic accounting documents, its government travel services contracts that were to be part of the shared-business provision in the VA contracts, its bank statements, its individually billed account (IBA) reports, or its centrally billed account (CBA) reports.

## II.    ARGUMENT AND CITATION TO AUTHORITY

Pursuant to FRCP 37(a)(3)(B), a party seeking discovery may move for an order compelling an answer, designation, production or inspection if a party fails to answer an interrogatory submitted under FRCP 33 or if a party fails to permit inspection as requested under FRCP 34.  Further, an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond for purposes of motions for an order compelling discovery.   FRCP 37(a)(4).   Thus, Duluth respectfully requests that this

Court enter an Order compelling Plaintiff to properly and fully respond to Duluth's discovery as outlined herein.

**A. Request for Forensic Image of Plaintiff's Media**

With regard to Plaintiff's document search, collection, and production process, it came nowhere close to meeting its discovery obligations. For example, Plaintiff (1) never implemented a litigation hold nor did it adhere to any document retention policy; (2) it self-collected documents; (3) it had its key witnesses handpick emails to produce from some of their email folders; and (4) it did not use a keyword search to collect emails.

When a party reasonably anticipates litigation, it "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, *11 (S.D. Fla. 2011). Plaintiff violated this rule by never implementing any sort of litigation hold or other procedure to preserve evidence. *See Hale Deposition* (Exhibit K at 104:5) *& Plaintiff's Response to Duluth's 2nd Request for Production of Documents* ("*Responses to 2nd RPDs*") (Exhibit L p. 2). Plaintiff acknowledges that its former vice president of finance, James Kern, testified that Plaintiff had a document retention policy requiring financial records be maintained for a period of 5 years. *Hale Deposition* (Exhibit K). Further

the Federal Acquisition Regulations (FAR) require a 4-year document retention policy for accounting documents on federal contracts. *See* FAR 4.705-1.   As further discussed below, Plaintiff's failure to preserve key documents raises extensive spoliation concerns given the requirements pursuant to which Plaintiff should have adhered. Especially when compared and contrasted to the massive amount of critical financial data the Plaintiff claims it cannot find, has been lost or destroyed.   Without access to this information, Plaintiff has prejudiced Duluth's ability to defend itself against Plaintiff's claims *and* pursue its own counterclaims against Plaintiff. Accordingly, a forensic image of Plaintiff's ESI is required to determine which documents Plaintiff may have lost or deleted that are relevant to this case.

With regard to collecting and producing relevant ESI, Plaintiff had "the responsibility to take affirmative steps to ensure that all sources of discoverable information were identified, searched, and reviewed so that complete and timely responses to discovery requests could be provided." *U&I Corp v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 676 (M.D. Fla. 2008).   That responsibility includes creating key word searches "with input from the ESI's custodians as to the words and abbreviations they use." *William A. Gross Constr. Assocs. Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D.

134, 136 (S.D.N.Y. 2009); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla 2007) ("[S]ampling and other quality assurance techniques must be employed" when using search terms).   Further, the law strictly prohibits counsel from leaving its client's employees in charge of document search and collection.   *E.g., Pension Comm. Of the Univ. of Montreal Pension Plan v. Band of Am. Secs., LLC*, 685 F. Supp. 2d 456, 473 (S.D.N.Y. 2010), abrogated on other grounds by *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012).

Plaintiff's collection of ESI was staggeringly deficient, as it conducted, at best, a cursory effort to search for documents, leaving its employees in charge of the search and selection of documents to produce. *See Response to 2nd Interrogatories* (Exhibit I p. 2).   For example, Lynn Slaughter, an employee of Adtrav, testified that she was never given instructions on how to search for documents nor given search terms nor even shown the discovery requests or the Complaint.   She merely decided for herself whether something was relevant.   *See Excerpts from the Deposition of Lynn Slaughter* ("*Slaughter Deposition*") (Exhibit M p. 2:11).   Similarly, Lisa McGowen, an Adtrav employee and one of its 30(b)(6) designees, also conducted only a broad email search without keywords and without having seen the Complaint.   *See Excerpts from the Deposition of Lisa McGowen*

(Exhibit N).  Allowing key witnesses to be in charge of collecting their own documents is improper given that they can delete unfavorable evidence or delete the hard-drives of former employees.  *Jones v. Bremen High Sch. Distr. 228*, 2010 WL 2106640, *7 (N.D. Ill 2010).

Even more perplexing is the fact that Plaintiff has a Chief Technology Officer,[1] Robert Reynolds, who was never consulted for purposes of responding to the discovery requests.  *See Parties Discovery Dispute Correspondence* (Exhibit F p. 9) and *Response to 1ˢᵗ Interrogatories* (Exhibit D p. 2).  Further, Lynn Slaughter indicated that Mr. Reynolds handled the IT functions for Plaintiff.  *Slaughter Deposition* (Exhibit M).   To date the only individuals that Plaintiff consulted for responding to discovery are Roger Hale and Lisa McGowen.  *Response to 1ˢᵗ Interrogatories* (Exhibit D p. 2).[2] Roger Hale, whom Plaintiff identified as its records custodian, apparently never performed a search for documents but rather "asked Adtrav personnel to search their files for VA information."  *See Response to 2ⁿᵈ Interrogatories* (Exhibit I pp. 3-4).  Further, despite Plaintiff only listing its ESI sources as "TRAMS, its reporting database, or desktop computers," it is unclear whether any of these sources were properly searched.  *See id*.  It

---

[1] www.Adtrav.com/leadership
[2] Duluth subsequently learned from Lynn Slaughter's deposition that she also provided information for responding to discovery.  This omission further represents Plaintiff's *de minimis* effort to provide complete discovery responses.

seems unlikely that a company the size of Plaintiff would not have email servers and backup servers for their ESI.  Given that Duluth has no idea of even the basic infrastructure of Plaintiff's ESI, it cannot begin to make a determination of the amount of ESI Plaintiff has withheld, failed to analyze, and/or destroyed.   A forensic image is the only method that will allow Duluth to obtain the information that it has requested and to which it is entitled under the discovery rules.

**B. Evasive or Incomplete Responses to Discovery Requests**

Throughout the correspondence attached hereto as Exhibits E, F, and G, described above, Duluth has requested certain information and documents that Plaintiff has yet to provide a response or produce.   All of the interrogatories and documents discussed below are contained in Duluth's First Interrogatories and Request for Production of Documents and Second Interrogatories and Request for Production of Documents.   Those requests go to the most essential elements of this case, namely the Plaintiff's collection and reporting of revenues earned by the Parties pursuant to the VA contracts.   Thus, Duluth respectfully requests that this Court order the Plaintiff to substantively respond to the following:

**Interrogatories:**

Interrogatory #2:

Please identify by date, amount, and payor each and every transfer of value by payment or otherwise of any kind made to, received by, or retained by or for the benefit of Plaintiff between January 1, 2008 and 2013 inclusive arising from the VA contracts.

RESPONSE: ADTRAV objects to this interrogatory as overbroad, vague, and overly burdensome. Subject to and without waiving these objections, ADTRAV states that Duluth has been in possession of records and reports that would adequately answer this question. In addition, the answer to this interrogatory may be determined by examining the weekly net remit reports that were transmitted between the parties during the course of the relationship, and the burden of deriving the answer will be substantially the same for either party. Subject to and without waiving these objections, ADTRAV has reproduced the weekly net remit reports and monthly reconciliations and statements for which the answer to this can be derived.

Plaintiff's response in conjunction with its responses to Duluth's requests for production #2, #8, #9, and #10 comprises a pervasive and critical failure to respond.  Plaintiff has produced voluminous records that Plaintiff self-generated and supplied to Duluth during the course of the VA contracts to support Plaintiff's reporting and distribution of revenue. However, this information lacks documentation supplied by the actual vendors and from Plaintiff's internal accounting records for the self-generated reports that Plaintiff supplied to Duluth.  Plaintiff provided some backup for the transaction fees from 2010-2013 that it paid pursuant to the VA contracts, although 19 weeks of backup were missing from these documents.  It did not, however, provide any backup for transaction fees from 2008-2009.  Plaintiff claims that this information is no longer available and does not know what happened to it.  *See Hale Deposition* (Exhibit O).

Plaintiff did not provide backup for the commission payments.  Plaintiff also did not provide any backup for segment fees.  Duluth also requested copies of individual checks that vendors paid directly to Plaintiff.  Plaintiff objected to producing individual checks because any such production would be "too burdensome."  In response, Duluth asked to inspect Plaintiff's records, but Plaintiff has provided no reply whatsoever. *See Duluth Deficiency Letter* (Exhibit G p. 3) and *Plaintiff's Deficiency Response* (Exhibit H).  Plaintiff's failure to identify or produce virtually all of this critical information coupled with its acknowledged failure to either follow a record-retention policy or to conduct even the most rudimentary electronic records search, evidences the scale of the Plaintiff's failure to adequately respond to Duluth's discovery requests. Accordingly, Duluth requests that Plaintiff be compelled to provide full and complete responses to this request and/or a forensic image of their ESI.

Interrogatory #3:

This interrogatory requested information concerning any bank accounts that Plaintiff used for depositing any funds related to the VA contracts.  Duluth has identified at least one check that clearly shows a deposit that Plaintiff made into a Regions bank account that Plaintiff has failed to identify.  *Regions Bank Deposit* (Exhibit P) [Bank account number

redacted for purposes of filing]. When asked about this check, Plaintiff responded that it "is not familiar with a Regions bank account of that number." *See Plaintiff's Deficiency Response* (Exhibit H p. 2). Duluth requests that Plaintiff be compelled to provide full, complete responses to this request and an explanation as to why it deposited a check into the unidentified Regions bank account.

Interrogatory #5:

This interrogatory in conjunction with request for production #2 sought copies of every contract that Plaintiff has been awarded for the provision of travel-related services to any branch or agency of the Federal Government from December 2005 through December 2013. While Plaintiff has identified contracts pursuant to this request, it has refused to produce copies of the contracts. These documents are specifically relevant to Duluth's claims related to Plaintiff's breach of the 2005 VA contract's shared-business provision as detailed in Duluth's Answer and Counterclaim. *See* Court Document 4 pp. 10-11. Further, Duluth specifically requested for deposition, an Adtrav representative who could discuss the revenue generated from these contracts and advised Plaintiff of Duluth's need for these documents and their relevancy to this case at the Plaintiff's 30(b)(6) deposition. *See Hale Deposition* (Exhibit J). Plaintiff maintains its refusal to

produce any of these documents or information with regard to the revenue earned under these contracts.[3]  Accordingly, Duluth requests that Plaintiff be compelled to provide a full, complete response to this request and produce the documents requested and information about the revenue generated therefrom.

**Requests for Production:**

Request #2:

This request sought all documents requested to be identified in the interrogatories that were contemporaneously served with the requests for production.  Duluth refers to its paragraph regarding interrogatory #2 listed above.

Request #3:

3. Please produce all account statements and supporting documentation (including all deposit slips, cancelled checks, reconciliation statements, wire transfer support, debit/credit memo support) for all bank, brokerage or other financial accounts used to deposit or transfer funds relating to VA travel for the joint account maintained by Plaintiff from the date of opening through today.

RESPONSE: ADTRAV objects to this request as confusing, vague, ambiguous, overly broad, and unduly burdensome. ADTRAV objects to producing information for which Duluth had equal access. In addition, the information sought was regularly communicated through the reporting mechanism agreed to between the parties, and Duluth has online access to this same information. Subject to and without waiving these objections, ADTRAV has produced some account documents for the joint bank accounts at Red Mountain Bank and Aliant Bank. Both Duluth and ADTRAV deposited VA commissions and other revenue into their own

---

[3] It should be noted that an Order is already in place to protect the confidentiality of these relevant documents.

respective operating accounts as well as the joint accounts. The parties
then reconciled during the monthly revenue split process. Duluth actually
received more money directly into their Duluth account than ADTRAV
received into ADTRAV's operating account and the joint account
combined.

Plaintiff has produced only six (6) months' worth of bank statements from
October 31, 2007-March 31, 2008. These statements are from the parties'
Red Mountain joint bank account. Plaintiff claims it has no other documents
related to the Red Mountain joint bank account or the Alliant joint bank
account. In spite of Plaintiff admitting to depositing funds from the VA
contracts into its Alliant operating account, it has refused to produce any
documents responsive to this request "unless and until Duluth can
satisfactorily explain why the VA reconciliation process information is not
adequate for purposes of this litigation." *See Plaintiff's Deficiency Response*
(Exhibit H p. 3). Clearly, Plaintiff's objection is not a valid ground for
withholding these documents. It is also indicative of Plaintiff's pervasive
position that it does not need to provide corroborating support for any of its
self-generated financial reporting to Duluth. Based on the foregoing, Duluth
requests that Plaintiff be compelled to provide a full, complete response to
this request and produce the documents requested. Duluth also requests a
forensic image of Plaintiff's ESI for the documents it claims are no longer
available.

Request #4:

This request sought Plaintiff's entire file with regard to its dealings with Duluth concerning the contracts which form the basis of this litigation. Plaintiff has claimed that "it has produced known documents relevant to this dispute," but it has not indicated which documents are responsive. Plaintiff has also objected that the request is burdensome and that materials responsive to this request are proprietary and confidential.

Request #8:

This request specifically sought backup for commissions or overrides generated from car and hotel rentals that Plaintiff reported. Plaintiff's response/objection, in conjunction with its response to Duluth's interrogatory #2, further evidences a pervasive and critical failure to respond.

Request #9:

This request specifically sought backup for transaction fees generated from airline ticket transactions that Plaintiff reported. Plaintiff's response/objection, in conjunction with its response to Duluth's interrogatory #2, further evidences a pervasive and critical failure to respond.

Request # 10:

This request specifically sought backup for GDS segment fees and bonuses generated from incentive payments from vendors as that Plaintiff reported.  Plaintiff's response/objection, in conjunction with its response to Duluth's interrogatory #2, further evidences a pervasive and critical failure to respond.

Requests #12-16:

These requests were all of a similar nature seeking documents evidencing communications between Plaintiff and various commission-collect entities, including TACS, Pegasus, Paymode, CTS, and a catch-all for other entities related in any way to the VA contracts.  Plaintiff stated that it has "no known written documents that evidence 'communications'" between Plaintiff and those entities.  *See Plaintiff's Deficiency Response* (Exhibit H p. 5).  Since these companies are responsible for commission payments from the vendor to Plaintiff, communications between Plaintiff and them related to the VA contract are clearly relevant.  Despite Plaintiff's response, Plaintiff would have had hundreds of thousands of commission payments from these entities over the course of the VA contracts, yet it has indicated that not once did it ever communicate with them.  Based on this seemingly evasive response, Duluth requests a forensic image of Plaintiff's ESI to determine whether these communications were deleted.

<u>Request #17</u>:

17. Please provide a download of all electronic accounting system files (including but not limited to general ledger accounts) related to the VA contracts from January 1, 2008 through today.

RESPONSE: Adtrav objects to the extent this request seeks information beyond the scope of this case. Adtrav objects to the extent that it seeks proprietary and confidential information. Adtrav objects to the unduly burdensome and unreasonable nature of this request.  The Adtrav accounting system does not have the capability to separate the VA accounting information from other customers, other than in the reports and documentation that was shared between the parties and has been produced by Adtrav and by Duluth. Adtrav believes all relevant information is contained with the previously produced documents or within the bank statements to which Duluth has online access.

In Duluth's discovery deficiency letter of May 19, 2015, it specifically requested information about Plaintiff's burdensomeness objection and asked Plaintiff to produce the proprietary and confidential documents since the parties have a protective order in place. *See* (Exhibit G).   In Plaintiff's response letter of June 12, 2015, Plaintiff simply stood by its response.  *See* (Exhibit H p. 5).  Duluth requests that Plaintiff be compelled to provide a full, complete response to this request and produce the documents requested. Plaintiff should not be permitted simply to rely on reports that it specifically created for Duluth to see and is required by the discovery rules to provide such information.  Plaintiff's internal accounting information, including, but not limited to, general ledgers, profit and loss statements, and balance sheets, is clearly relevant and would permit Duluth to verify or dispute Plaintiff's self-generated reports of revenue for the VA contracts.

Request # 18:

18. Please identify and produce all internally generated or prepared reports used to track and manage project or customer based activity and/or profitability related to the VA contracts from January 1, 2008 through today.

Response: Adtrav objects to the extent this request seeks unidentifiable information is vague, ambiguous, overly broad, and unduly burdensome. Adtrav cannot speculate or guess what Duluth is seeking. Adtrav objects to the extent that it seeks proprietary and confidential information. Subject to and without waiving these objections, to the extent Adtrav understands what Duluth is seeking, Adtrav states the information is contained in the weekly and monthly revenue reports that were exchanged between the parties and have been produced in this litigation.

In Duluth's discovery deficiency letter of May 19, 2015, it again specifically requested information about Plaintiff's burdensomeness objection and asked Plaintiff to produce the proprietary and confidential documents (if any) since the parties have a protective order in place. *See* (Exhibit G).  In Plaintiff's response letter of June 12, 2015, Plaintiff simply stood by its response.  *See* (Exhibit H p. 5).  The requested reports used to track and manage contracts are clearly relevant to the issues in this case.  Accordingly, Duluth requests that Plaintiff be compelled to provide a full, complete response to this request and produce the documents requested.

Request #19:

Duluth sought reports from centrally billed accounts (CBA) and individually billed accounts (IBA) from January 1, 2008 to present. Typically, if a government transaction is billed on a credit card it will run

through a CBA, and this system tracks government purchases.  Other types of transactions run through an IBA, but these transactions are much less frequent.  Collectively these reports are another way to verify Plaintiff's transaction and revenue reports.  Plaintiff claims it no longer has these reports.  Given the lack of information about Plaintiff's ESI, the lack of a litigation hold, the lack of a document-retention policy, and the lack of information about a document search related to this request, Duluth requests that Plaintiff be compelled to produce a forensic image of its ESI so that Duluth may determine when these records where deleted or otherwise made unavailable and whether there is a spoliation issue.

**Objections & Instructions**:

Foundation for objections: Both in the original discovery and in discovery deficiency letters, Duluth has repeatedly asked Plaintiff to explain its foundation for burdensomeness which Plaintiff has refused to do.  *See Duluth's 1st Interrogatories* (Exhibit B p. 5),[4] *Duluth's Deficiency Letter* (Exhibit G p. 2), and *Plaintiff's Deficiency Response* (Exhibit H p. 1).  However, FRCP 33(b)(4) requires that objections be stated with specificity.  *See also Rosen v. Provident Life and Accident Ins. Co.*, 2015 WL 4139024, 6 (N.D. Ala.) ("An objection must show specifically how a [discovery

---

[4] Note this instruction was incorporated in all other discovery requests that Duluth sent.

request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden"). Duluth requests a response indicating the nature of the burden for interrogatories #2, #4, #15, #18 and #21 and for requests for production #3, #4, #9, #10, #12, #14, #15, #16, #17, and #18.

Privilege/Confidentiality Log: Duluth has asked for a log of documents withheld. *See Duluth's 1ˢᵗ Interrogatories* (Exhibit B pp. 5-6) and *Duluth's Deficiency Letter* (Exhibit G p. 2). Plaintiff has indicated it has not withheld any documents on the basis of privilege, but Plaintiff has withheld documents for confidentiality/proprietary reasons. To the extent any documents are withheld, Duluth requests a log of those documents with sufficient information to demonstrate the propriety of the withholding.

In its instructions, Duluth requested that Plaintiff indicate which documents were responsive to specific requests for production. Plaintiff has not specified any of its documents as being responsive to any given request, with the exception of citing its entire production for responses to a few requests. Also despite the information provided for Request #2, Plaintiff did not specify which interrogatory responses were supported by the documents it produced pursuant to that request. Duluth should not be required to have to delve through thousands of pages to determine which are responsive to

Duluth's individual requests. Duluth requests that Plaintiff be compelled to provide this information and indicate the bates numbers of documents that are responsive to specific, individual requests.

Wherefore, and based on the foregoing, Duluth respectfully requests that the Court enter an Order compelling Plaintiff to provide adequate discovery responses, with deadlines the Court deems appropriate, and to consider the impact that this late production of critical information may have on the case schedule, including the October 13, 2015 deadline for Duluth's expert report.[5]

This the 2nd day of November, 2015.

Respectfully submitted,

/s/ D. *Michael Sweetnam*
D. MICHAEL SWEETNAM

OF COUNSEL:

Sweetnam & Schwartz, LLC
Suite 190
1200 Ashwood Parkway
Atlanta, GA  30338
Phone: (678) 528-6739

---

[5] Further, because of Plaintiff's refusal to comply with the discovery rules and its actions, which have forced Duluth to file this motion, Duluth respectfully asks the Court to award a reasonable attorneys' fee pursuant to FRCP 37(a)(5).

/s/ *Lynne Stephens O'Neal*
LYNNE STEPHENS O'NEAL

/s/ *Jim H. Wilson*
JIM H. WILSON

Attorneys for
Defendant/Counterclaim Plaintiff
Duluth Travel, Inc.

OF COUNSEL:

LEITMAN, SIEGAL & PAYNE, P.C.
Wells Fargo Tower
420 20th Street North, Suite 2000
Birmingham, AL 35203

## CERTIFICATE OF SERVICE

I hereby certify that I have filed a copy of the foregoing using the Court's CM/ECF electronic filing system and have served a copy upon all counsel of record via EMAIL on this the 2nd day of November, 2015.

Roger L. Bates, Esq.
Tracy R. Davis, Esq.
Hand Arendall, LLC
2001 Park Place North
Suite 1200
Birmingham, AL 35203

/s/ *Jim H. Wilson*